**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

CONSUMER DIRECTED PERSONAL
ASSISTANCE ASSOCIATION OF NEW YORK
STATE, INC.; WESTERN NEW YORK
INDEPENDENT LIVING CENTER, INC.;
SOUTHERN TIER INDEPENDENCE CENTER,
INC.; and CONSUMER DIRECTED CHOICES,
INC.,

                             **Plaintiffs,**

               v.                                  1:18-CV-746
                                                       (FJS/CFH)

**HOWARD ZUCKER, as Commissioner of
the Department of Health; and NEW YORK
STATE DEPARTMENT OF HEALTH,**

                             **Defendants.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **BOND, SCHOENECK & KING, PLLC**<br>22 Corporate Woods Boulevard<br>Suite 501<br>Albany, New York 12211<br>Attorneys for Plaintiffs | **HERMES A. FERNANDEZ, ESQ.** |
| **OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants | **MICHAEL G. MCCARTIN, AAG** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiffs' complaint seeks declaratory and injunctive relief "arising under the First

Amendment to the United States Constitution and Article I, § 8 of the Constitution of the State of New York challenging subdivision 4-c as added to New York Social Services Law Section 365-f by Chapter 57 of the Laws of 2019, having an effective date of April 1, 2018." *See* Dkt. No. 1 ("Complaint") at ¶ 1. Plaintiffs ask the Court to declare subdivision (4-c) unconstitutional on its face and to enjoin Defendants from enforcing the same. *See id.* at ¶ 3.

Plaintiffs' complaint contains three causes of action. Count One alleges a "violation of the Federal Right of Free Speech – Commercial Speech." *See id.* at ¶¶ 61-69. Specifically, Plaintiffs allege that subdivision (4-c) unconstitutionally burdens, restricts and infringes their right to free speech under the First Amendment. *See id.* at ¶ 63. Furthermore, Plaintiffs assert that their advertisements regarding the Consumer Directed Personal Assistance Program ("CDPAP") concern a lawful activity and express their support for self-direction and the CDPAP as a means of self-direction. *See id.* at ¶¶ 64-65. Plaintiffs also allege that Defendants lack a substantial interest in reviewing Plaintiffs' advertisements prior to their dissemination and that the requirement that they submit their advertisements to the Department of Health ("Department") prior to dissemination and that they not use their advertisements until the Department has approved them, *i.e.*, prior approval, does not directly advance any legitimate governmental interest. *See id.* at ¶¶ 66-67. Finally, Plaintiffs contend that, even if Defendants have a legitimate interest in restricting advertising, the requirement of prior approval is not narrowly tailored to serve that interest. *See id.* at ¶ 68.

Count Two alleges a "violation of the Federal Right of Free Speech – Prior Restraint." *See id.* at ¶¶ 70-74. Specifically, Plaintiffs assert that the prior approval requirement of subdivision (4-c) chills and interferes with their right to free speech and that the submission and preapproval requirements that subdivision (4-c) imposes are not narrowly tailored to support a legitimate

governmental interest. *See id.* at ¶¶ 71-72. Finally, Plaintiffs assert that the submission and prior approval requirement of subdivision (4-c) is an unconstitutional prior restraint of protected speech. *See id.* at ¶ 73.

Count Three alleges a "violation of liberty of speech under the New York State Constitution." *See id.* at ¶¶ 75-78. Specifically, Plaintiffs assert that subdivision (4-c) unconstitutionally burdens and abridges their liberty of speech as protected by Article I, § 8 of the New York State Constitution. *See id.* at ¶ 77.

Pending before the Court are Plaintiffs' motion, by Order to Show Cause, for a preliminary injunction enjoining the application of New York Social Services Law § 365-f(4-c) ("subdivision (4-c)") during the pendency of this action on the ground that the statute is invalid and a clear violation of the First Amendment, *see* Dkt. No. 4-1 at ¶ 1, and Defendants' motion to dismiss Plaintiffs' complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see* Dkt. No. 8.

## II. DISCUSSION

### A. Plaintiffs' motion for a preliminary injunction

#### *1. Preliminary injunction standard*

Generally, "[a] party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *North Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (citation omitted). Moreover, "[w]here . . . the relief that plaintiffs seek either (1) stays

governmental action taken in the public interest pursuant to a statutory scheme, or (2) mandates an affirmative action, plaintiffs must demonstrate a 'clear' or 'substantial' likelihood of success on the merits of their claim." *Lopez Torres v. N.Y. State Bd. of Elections*, 462 F.3d 161, 183 (2d Cir. 2006), *rev'd on other grounds*, 128 S. Ct. 791 (2008) (citations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (stating that a clear or substantial likelihood of success on the merits is required if "(i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits"); *Pankos Diner Corp. v. Nassau Cnty. Leg.*, 321 F. Supp. 2d 520, 523 (E.D.N.Y. 2003) (applying the heightened standard and requiring a showing of a clear or substantial likelihood of success on the merits where the plaintiffs sought "to enjoin enforcement of and, ultimately, void a statute that was already in effect at the time that [the plaintiffs filed their complaint]").

Since "the proposed injunction's effect on the status quo drives the standard, [the court's first step is to] ascertain the status quo – that is, 'the last actual, peaceable uncontested status which preceded the pending controversy.'" *North Am. Soccer League*, 883 F.3d at 37 (quoting *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (per curiam) (quoting *LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994)) (footnote omitted). In the context of a preliminary injunction, "[t]he 'status quo' . . . is really a 'status quo ante.'" *Id.* at 37 n.5 (citations omitted). The Second Circuit has explained that "[t]his special 'ante' formulation of the status quo in the realm of equities shuts out defendants seeking shelter under a current 'status quo' precipitated by their wrongdoing." *Id.*; *see also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1012 (10th Cir. 2004) (*en banc*) (*per curiam*) (explaining that determining the status quo is important in this context because,

"[a]t the preliminary injunction stage, . . ., the function of the court is not to take whatever steps are necessary to prevent irreparable harm, but primarily to keep things as they were, until the court is able to determine the parties' respective legal rights").

In this case, the status quo for purposes of Plaintiffs' motion for a preliminary injunction is the situation that existed when Plaintiffs filed their complaint on June 26, 2018, at which time subdivision (4-c) was in effect[1] and required Plaintiffs to submit their advertisements to the Department for approval prior to disseminating them. Thus, Plaintiffs are seeking a mandatory injunction, *i.e.*, they are seeking to alter the status quo by asking the Court to enjoin Defendants from enforcing subdivision (4-c), thereby allowing Plaintiffs to disseminate their advertisements without first submitting them to the Department for preapproval during the pendency of this action.

Finally, because Plaintiffs are seeking a mandatory injunction, to prevail on their motion, they must show that there is a "clear" or "substantial" likelihood that they will prevail on the merits of their claims.[2]

### *2. Clear or substantial likelihood of success on the merits*

As noted, Plaintiffs assert three causes of action, all of which claim that subdivision (4-c) violates their free speech rights: (1) a violation of their right to free speech – commercial speech under the First Amendment; (2) a violation of their right to free speech – prior restraint under the

---

[1] Subdivision (4-c) became effective on April 1, 2018.

[2] Even without reference to the status quo or whether Plaintiffs are seeking a mandatory or prohibitive preliminary injunction, the Court concludes that this heightened standard is appropriate because Plaintiffs are seeking to enjoin enforcement of and, ultimately, void a statute that was in effect at the time they filed their complaint. *See Pankos Diner Corp.*, 321 F. Supp. 2d at 523.

First Amendment; and (3) a violation of their liberty of speech under the New York State Constitution.

As the Second Circuit explained in *Alexander v. Cahill*, 598 F.3d 79 (2d Cir. 2010), "[t]he Supreme Court has established a four-part inquiry for determining whether regulations of commercial speech are consistent with the First Amendment:

> '[1] whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask [2] whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine [3] whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest.'"

*Id.* at 88 (quoting *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980)) (footnote omitted). Moreover, "'[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'" *Id.* at 90 (quoting *Edenfield v. Fane*, 507 U.S. 761, 770, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993)).[3]

With regard to the first prong of the *Central Hudson* test, Plaintiffs assert that their advertisements concern lawful activity and are not inherently misleading. Defendants do not dispute either of these contentions.

With regard to the second prong of the *Central Hudson* test, the parties dispute both what

---

[3] The fact that Defendants bear the burden of justifying subdivision (4-c)'s restriction on Plaintiffs' commercial speech presents a unique situation in the context of a preliminary injunction motion, which requires that Plaintiffs demonstrate a clear or substantial likelihood that they will succeed on the merits of their claims. In effect, to prevail on their preliminary injunction motion in this case, Plaintiffs must show that there is a clear or substantial likelihood that Defendants will **not** be able to meet their burden to demonstrate that subdivision (4-c) passes constitutional muster under the *Central Hudson* test.

the State's interest is and whether that interest is substantial. Plaintiffs concede that, if the governmental interest in enacting subdivision (4-c) was to prevent false and misleading advertising, that interest is substantial. However, Plaintiffs argue that a closer look at subdivision (4-c) suggests that the elimination of false and misleading advertising was not the interest behind the enactment of subdivision (4-c). Rather, Plaintiffs claim that the State's interest in enacting subdivision (4-c) was to reduce awareness of the Consumer Directed Personal Assistance Program ("CDPAP") and thereby to limit State government expenditures, which, Plaintiffs contend, is not a substantial governmental interest. To support their argument, Plaintiffs point to the fact that subdivision (4-c) was enacted as part of Fiscal Year 2019's budget and that there were other existing statutes that already prohibited and penalized false, misleading or deceptive advertising.

Thus, for all these reasons, Plaintiffs assert that Defendants cannot demonstrate that subdivision (4-c) satisfies the second prong of the *Central Hudson* test.

The explicit language of subdivision (4-c) clearly indicates that its purpose is to prevent Fiscal Intermediaries from disseminating false and misleading advertising. The initial paragraph of subdivision (4-c) provides that "[a] fiscal intermediary shall not publish any advertisement that is false or misleading." N.Y. Soc. Serv. Law § 365-f(4-c)(a). Subdivision (4-c) also defines the term "advertisement," sets out the requirements that Fiscal Intermediaries must submit all their advertisements to the Department prior to dissemination and shall not disseminate any advertisement until the Department has approved the same, and then sets forth the penalties that Fiscal Intermediaries will face if they disseminate false or misleading advertisements or advertisements that the Department has not preapproved.

Moreover, given the clear language of subdivision (4-c), it is not necessary for the Court to

consider Plaintiffs' extra-textual "evidence" to determine the State's interest in enacting subdivision (4-c). *See Trump v. Hawaii*, 138 S. Ct. 2392, 2412 (2018) (stating that, although the plaintiffs "seek to locate additional limitations on the scope of [the statute] in the statutory background and legislative history[,] [g]iven the clarity of the text, [the Court] need not consider such extra-textual evidence" (citation omitted)). As the Second Circuit noted in *Alexander*, "'[t]he *Central Hudson* standard does not permit [the court] to supplant the precise interests put forward by the State with other suppositions.'" *Alexander*, 598 F.3d at 90 (quoting [*Florida Bar*, 515 U.S.] at 624, 115 S. Ct. 2371).

For all these reasons, the Court finds that the State's interest in enacting subdivision (4-c) was to prevent Fiscal Intermediaries from disseminating false or misleading advertising and that this interest, as Plaintiffs concede, is a substantial governmental interest. Therefore, the Court concludes that Plaintiffs have not demonstrated a clear or substantial likelihood of success on the merits of their claim that Defendants will be unable to prove that subdivision (4-c) satisfies the second prong of the *Central Hudson* test.

The third prong of the *Central Hudson* test requires that the statute or regulation at issue directly advances the stated governmental interest. *See Alexander*, 598 F.3d at 91 (stating that "'[t]he penultimate prong of the *Central Hudson* test requires that a regulation impinging upon commercial expression "directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose"'" (quoting *Edenfield*, 507 U.S. at 770, 113 S. Ct. 1792 (quoting *Central Hudson*, 447 U.S. at 564, 100 S. Ct. 2343))).

Plaintiffs argue that subdivision (4-c)'s prior approval requirement does not directly advance

the State's interest in preventing Fiscal Intermediaries from disseminating false or misleading advertising. Plaintiffs explain that the prior approval requirement covers all advertisements, not just false or misleading ones, and punishes any Fiscal Intermediary that fails to submit its advertisements or makes use of advertisements without the Department's approval whether or not those advertisements are false or misleading. Therefore, Plaintiffs contend that subdivision (4-c), by its explicit terms, is not limited, and its punishments are not limited, to false and misleading advertising and, thus, does not directly advance the State's interest in preventing false or misleading advertising.[4]

"The third [prong] of the *Central Hudson* test asks whether the speech restriction directly and materially advances the asserted governmental interest." *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999). Furthermore, "'[t]his burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" *Id.* (quoting *Edenfield*, 507 U.S., at 770-771, 113 S. Ct. 1792); *see also Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 448 (S.D.N.Y. 2016)

---

[4] In response to Defendants' argument that the prior restraint doctrine is inapplicable to commercial speech, Plaintiffs assert that they are not arguing that the law of prior restraint applies to commercial speech; rather, they are arguing that Defendants have the burden of identifying a substantial governmental interest and justifying the challenged restriction. This argument is somewhat puzzling given Plaintiffs' second cause of action, which is entitled "violation of the Federal Right of Free Speech – **Prior Restraint**," *see* Complaint at ¶¶ 70-74 (emphasis added). However, it appears that Plaintiffs are trying to argue that, in this case, Defendants' choice of a prior restraint, *i.e.,* the requirement that Plaintiffs submit their advertisements to the Department before they disseminate them, does not directly advance the State's substantial interest in preventing Fiscal Intermediaries from disseminating false or misleading advertising. Thus, it is not the use of a "prior restraint" that is the problem; rather, it is that, in this case, the prior restraint that Defendants seek to enforce is not reasonable because it does not materially advance the stated governmental interest for enacting subdivision (4-c).

(stating that "[t]he statute must advance the interest in a 'material way,' and the government must demonstrate that 'the harms it recites are real and that its restriction will in fact alleviate them'" (quoting *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 486-87, 115 S. Ct. 1585, 131 L. Ed. 2d 532 (1995))). Thus, a "'regulation may not be sustained if it provides only ineffective or remote support for the government's purpose.'" *Greater New Orleans Broad. Ass'n*, 527 U.S. at 188 (quoting *Central Hudson*, 447 U.S., at 564, 100 S. Ct. 2343). Finally, "[i]n substantiating the harm, the [State] is not required to produce 'empirical data . . . accompanied by a surfeit of background information.' . . . Instead, the Supreme Court has 'permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether[] . . .'" *Vugo, Inc. v. City of New York*, No. 15-CV-8253, 2018 WL 1033239, *7 (S.D.N.Y. Feb. 22, 2018) (quoting *Lorrilard*, 533 U.S. at 555, 121 S. Ct. 2404).

To demonstrate that subdivision (4-c)'s requirement that Fiscal Intermediaries submit their advertisements to the Department prior to disseminating them materially advances the State's purpose of preventing false or misleading advertisements, Defendants submitted the Declaration of Donna Frescatore. *See* Dkt. No. 9-1 ("Frescatore Decl.").[5] Ms. Frescatore asserts that "[c]hoosing [a Fiscal Intermediary] is one of the informed choices CDPAP recipients must make[, and] [i]nformed choices are only possible when recipients and their designees are able to rely on materials they receive." *See id.* at ¶ 5. Furthermore, Ms. Frescatore states that, "[i]f advertising is false or misleading, consumers cannot compare services and providers so they are able to choose

---

[5] Ms. Frescatore is "the Medicaid Director for New York State and a Deputy Commissioner with the New York State Department of Health . . . heading the Office of Health Insurance Programs[, and] the Executive Director of NY State of Health, New York's Official Health Plan Marketplace[.]" *See* Frescatore Decl. at ¶ 1.

-10-

the provider that best meets their needs." *See id.* Ms. Frescatore also notes that "[i]t is . . . important to remove false and misleading advertising from circulation, as such advertising encourages ineligible people to submit applications that require considerable local district resources to process, evaluate, determine and resolve . . . [t]hereby diverting resources away from applications of consumers in desperate need of assistance." *See id.* at ¶ 6.

In her declaration, Ms. Frescatore also provides

> [e]xamples of advertisements that misstate, misrepresent, or overstate what the [Fiscal Intermediaries] and CDPAP provide have: [1] failed to explain that Medicaid eligibility is required to receive services; [2] suggested that CDPAP pays people to stay at home; [3] stressed that no training is required, without explaining that the consumer is responsible for training their assistants through CDPAP; [4] failed to explain that the service has to be a Medicaid covered service to be obtained through CDPAP; and [5] included services like dog walking and escort services when in actuality, such services are rarely, if ever, . . . covered by Medicaid.

*See id.*

In response to the Court's questioning during oral argument, Defendants' counsel stated that these were examples of false or misleading advertisements that the Department had seen, not simply examples of the types of advertisements that would be false or misleading. Thus, the Court finds that the "harm" that subdivision (4-c) is intended to alleviate – false or misleading advertisements – is "real." Moreover, it is clear that subdivision (4-c)'s requirement that Fiscal Intermediaries must submit their advertisements to the Department prior to disseminating them would alleviate this harm because the Department could determine whether the advertisements contain accurate information or, instead, portray misleading or false information **before** that information reaches

those to whom the Fiscal Intermediaries direct their advertisements and market their services.[6]

Keeping in mind that, to satisfy this prong of the *Central Hudson* test, Defendants are not required to produce empirical data accompanied by background information and given the early stage of this litigation, the Court finds that Defendants have demonstrated, based on the personal knowledge of Ms. Frescatore, that the Department is aware that at least some Fiscal Intermediaries have disseminated false or misleading advertisements in an effort to market their services to the public. Therefore, the Court finds that, at best, Plaintiffs have raised some issues about whether Defendants will ultimately be able to prove that subdivision (4-c) satisfies the third prong of the *Central Hudson* test, but they have not demonstrated that there is a clear or substantial likelihood that, on a more developed record, Defendants will be unable to meet their burden.[7]

With regard to the fourth prong of the *Central Hudson* test, Plaintiffs argue that subdivision (4-c) is more extreme than necessary to serve the State's interest in preventing Fiscal Intermediaries from disseminating false or misleading advertisements because it requires them to submit all their advertisements to the Department for prior approval and, therefore, entirely honest and forthright

---

[6] Admittedly, it would be helpful to the Court to have more information about the examples that Ms. Frescatore provided, such as how many, and which, Fiscal Intermediaries have disseminated false or misleading advertisements; how often does the Department become aware of such false or misleading advertisements – daily, weekly, monthly, two or three times each year; and what harm have Consumers suffered as a result of such false or misleading advertisements. However, as the Court noted at oral argument, this case is in its very early stages and the parties have not yet had the opportunity to engage in discovery that would help them more fully develop the record.

[7] Likewise, the Court notes that, with a more fully developed record, Plaintiffs may be able to show that there is a clear or substantial likelihood of success on the merits of their claim, *i.e.,* that Defendants cannot meet their burden to demonstrate that subdivision (4-c) satisfies the third prong of the *Central Hudson* test. If this situation arises, Plaintiffs may, of course, file the appropriate motion for the Court's consideration.

messages, print materials, and other communications are swept within subdivision (4-c)'s broad coverage based on nothing more than the fact that they are disseminated by Fiscal Intermediaries and can reasonably be interpreted to be marketing to Medicaid beneficiaries. Thus, Plaintiffs contend that the truth or correctness of the advertisement will not be a defense and the failure to submit the advertisements for preapproval is in and of itself a reason for mandatory sanctions.

Plaintiffs also assert that Defendants have alternative and less intrusive means to address false or misleading advertisements such as the following: (1) referring matters to the State Attorney General under General Business Law §§ 349, 350, and 351 or (2) empowering the Department to act directly against any Fiscal Intermediary that engages in false or misleading advertising. Finally, Plaintiffs contend that the fact that subdivision (4-c) neither directly addresses the State's interest in preventing false or misleading advertisements nor uses a narrowly drawn means to address that interest is demonstrated by the fact that subdivision (4-c) does not reach other providers of home care or long-term care but, instead, is directed solely at Fiscal Intermediaries.

The fourth prong of the *Central Hudson* test "complements the direct-advancement inquiry of the third [prong], asking whether the speech restriction is not more extensive than necessary to serve the interests that support it." *Greater New Orleans Broad. Ass'n, Inc.*, 527 U.S. at 188. Moreover, this prong does not require that the government "employ the least restrictive means conceivable, but it must demonstrate narrow tailoring of the challenged regulation to the asserted interest – 'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" *Id.* (quoting *Fox*, 492 U.S., at 480, 109 S. Ct. 3028) (other citation omitted); *see also Alexander*, 598 F.3d at 95 (explaining that "'"laws restricting commercial speech . . . need only be tailored in a *reasonable*

*manner* to serve a substantial state interest in order to survive First Amendment scrutiny"'" (quoting *N.Y. State Ass'n of Realtors v. Shaffer*, 27 F.3d 834, 842 (2d Cir. 1994) (quoting *Edenfield*, 507 U.S. at 767, 113 S. Ct. 1792))). Furthermore, "'[t]he existence of numerous and obvious less-burdensome alternatives to the restriction on commercial speech is certainly a relevant consideration in determining whether the "fit" between ends and means is reasonable.'" *Alexander*, 598 F.3d at 95 (quoting *Florida Bar*, 515 U.S. at 632, 115 S. Ct. 2371). Finally, "[s]o long as the statute is tailored to the state's goals, '[w]ithin those bounds we leave it to governmental decisionmakers to judge what manner of regulation may best be employed.'" *Boelter*, 192 F. Supp. 3d at 451 (quoting [*Clear Channel Outdoor, Inc.*, 608 F. Supp. 2d] at 503-04 (citing *Fox*, 492 U.S. at 480, 109 S. Ct. 3028)); *see also Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 479 (1989) (noting that none of the Supreme Court's cases "invalidating the regulation of commercial speech involved a provision that went only marginally beyond what would have adequately have served the governmental interest. To the contrary, almost all of the restrictions disallowed under *Central Hudson*'s fourth prong have been substantially excessive, disregarding 'far less restrictive and more precise means.'" (quoting *Shapero v. Kentucky Bar Assn.*, 486 U.S., at 476, 108 S. Ct., at 1923) (other citations omitted))).

In this case, as Plaintiffs point out, Defendants might have chosen another manner in which to ensure that Fiscal Intermediaries did not disseminate false or misleading advertising. However, the existence of alternative means to address this substantial governmental interest, although a relevant consideration in determining whether the fit between the ends and the means is reasonable, does not automatically require a finding that Defendants' chosen method is unreasonable or that it is not in proportion to the State's substantial interest in preventing the dissemination of false or

misleading advertisements. Moreover, although Plaintiffs take issue with the fact that subdivision (4-c)'s preapproval requirement encompasses all advertisements, not only false and misleading advertisements, this is not only reasonable, but necessary, because the Department cannot determine whether a particular advertisement is false or misleading or accurate until it reviews that advertisement. Moreover, subdivision (4-c)'s requirement is not a complete ban on advertising; it merely provides the Department with a short 30-day review period[8] in which to determine the accuracy or inaccuracy of the advertisement. Such a requirement is not inherently unreasonable, and Plaintiffs have not demonstrated that there is a clear or substantial likelihood that Defendants will not be able to prove that this requirement is a reasonable and effective restriction that will materially advance the State's substantial interest in preventing Fiscal Intermediaries from disseminating false or misleading advertisements.[9]

---

[8] As Plaintiffs pointed out in their papers as well as at oral argument, subdivision (4-c) does not specify what happens if the Department does not reach its decision within the 30-day period. However, in her Declaration, Ms. Frescatore stated that, if the Department does not render a decision within 30 days, "the submitter may proceed with dissemination of such materials." *See* Frescatore Decl. at ¶ 7. Ms. Frescatore also asserted that

> [o]ne of the issues the draft guidance [that will guide the Department's enforcement of subdivision (4-c)] addresses is how the Department intends to handle the 30-day review requirement. . . . [I]f the Department does not review the advertising submission within the 30-day statutory requirement, the advertisement is deemed approved. The advertisement can then be freely used unless the Department determines at a later date that the advertising is false or misleading. Should this happen, the advertising must cease within 30 days after the [Fiscal Intermediary] receives notice from the Department.

*See id.* at ¶ 15.

[9] Plaintiffs also argue, in the alternative, that subdivision (4-c) is unconstitutional because it is a content-based restriction. An advertisement is inherently content-based because it is a particular type of speech. However, an advertisement is also commercial speech. As the court

(continued...)

In sum, for all of the above-stated reasons, the Court concludes that Plaintiffs have not demonstrated that there is a clear or substantial likelihood that they will prevail on the merits of their claims.[10]

### 3. Irreparable harm and public interest

Having found that Plaintiffs have not shown a clear or substantial likelihood of success on the merits of their claims, the Court does not need to, and will not, render a finding with regard to

---

[9](...continued)
noted in *Vugo*, "[a]lthough content-based laws generally receive strict scrutiny, in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, the Supreme Court carved out an exception for laws that target commercial speech – and therefore are necessarily content based." *Vugo*, 2018 WL 1033239, at *5 (citing 447 U.S. 557, 565-66, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980)). In addition, the court noted that, "[b]ecause 'speech proposing a commercial transaction . . . occurs in an area traditionally subject to government regulation,' *id.*, where a content-based regulation is aimed solely at commercial speech courts have traditionally applied the relaxed form of judicial scrutiny described in *Central Hudson*." *Id.* (citing *Matal v. Tam*, ___ U.S. ___, 137 S. Ct. 1744, 1763-64, 198 L. Ed. 2d 366 (2017)). Thus, to the extent that Plaintiffs argue that subdivision (4-c) is content-based because it targets advertisements, they are correct. However, to the extent that they argue that, because subdivision (4-c) is content-based, it is subject to heightened scrutiny, their argument overlooks the fact that "advertisements" are commercial speech, to which courts apply the *Central Hudson* test to determine whether the regulation or statute passes constitutional muster; and the *Central Hudson* test does not require the State to employ the least restrictive means to attain its substantial interest.

[10] This includes Plaintiffs' claim under the New York State Constitution. Although Plaintiffs argue that the New York State Constitution provides them more protection than the First Amendment, as Defendants point out, in *OTR Media Group, Inc. v. City of N.Y.*, 83 A.D.3d 451 (1st Dep't 2011), the court held that, "[c]ontrary to plaintiff's contention, the New York State Constitution does not afford heightened free speech protections to commercial speech. Rather, our courts apply the four-part test articulated by the United States Supreme Court in *Central Hudson Gas & Elec. Corp. v Public Serv. Comm'n of N.Y.* (447 US 557 [1980]) to restrictions on commercial speech (see *Matter of von Wiegen*, 63 NY2d 163, 172-173 [1984], *cert denied sub nom. Committee on Professional Stds. v von Wiegen*, 472 US 1007 [1985]; *Willow Media, LLC v City of New York*, 78 AD3d 596, 596 [2010])." *OTR Media Group*, 83 A.D.3d at 452.

the irreparable harm and public interest elements of the preliminary injunction standard. *See H'Shaka v. Bellnier*, No. 9:17-CV-0108, 2018 WL 798884, *9 (N.D.N.Y. Feb. 9, 2018).

Therefore, for all of the above-stated reasons, the Court denies Plaintiffs' motion for a preliminary injunction.

**B.     Defendants' motion to dismiss Plaintiffs' complaint for failure to state a claim**

Courts use a two-step inquiry when addressing a Rule 12(b)(6) motion. "First, they isolate the moving party's legal conclusions from its factual allegations." *Hyman v. Cornell Univ.*, 834 F. Supp. 2d 77, 81 (N.D.N.Y. 2011). Second, courts must accept factual allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A pleading must be "plausible on its face" such that it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

Although, as discussed above, Plaintiffs have not met the requirements for issuance of a preliminary injunction, even a cursory review of the factual allegations in their complaint establishes that they have alleged sufficient facts in their complaint, which the Court must accept as true, to render their complaint "plausible on its face." *Id.*

Therefore, the Court denies Defendants' motion to dismiss Plaintiffs' complaint for failure to state a claim.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and oral arguments,

and the relevant law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion for a preliminary injunction, *see* Dkt. No. 4-1, is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiffs' complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see* Dkt. No. 8, is **DENIED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Hummel for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: July 25, 2018
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge